UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

M. F.,

    Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security Administration,

    Defendant.

No. C 20-08742 WHA

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this social security appeal, this order finds that the administrative law judge improperly discounted the weight of plaintiff's symptom testimony. Accordingly, plaintiff's motion for summary judgment is **GRANTED IN PART** and the Acting Commissioner's cross-motion for summary judgment is **DENIED**. The action is **REMANDED**.

**STATEMENT**

1. **PROCEDURAL HISTORY.**

On August 25, 2015, plaintiff M.F. protectively applied for disability income benefits, alleging she has been unable to work since April 16, 2009, due to workplace harassment that

left her suffering from clinical depression (AR 12–23, 37–38, 259). Her disability application was denied both initially and upon reconsideration (AR 66, 84).

On December 17, 2019, plaintiff had a hearing before an ALJ (AR 28–53). The ALJ rendered a decision on February 7, 2020, finding that plaintiff was not disabled (AR 12–23). Plaintiff requested administrative review, and the Appeals Council denied the request on September 21, 2020 (AR 1–6). Plaintiff then filed this action seeking judicial review pursuant to Section 405(g) of Title 42 of the United State Code. The parties now cross-move for summary judgment.

**2.    PLAINTIFF'S TESTIMONY.**

In the hearing before the ALJ, plaintiff testified regarding her impairment, and the record contains treatment notes from multiple doctors that recite plaintiff's symptom testimony. The plaintiff's written submissions and oral testimony both describe how clinical depression and PTSD have left her unable to work. Plaintiff is a highly educated corporate attorney who has earned a J.D. and two Master of Law (LL.M.) degrees. After working in both legal and consulting firms, in 2008 she moved to continental Europe and took on the role of special advisor to the board of directors of a large, multinational energy company. Shortly after starting her new role, plaintiff fell victim to a campaign of workplace harassment. This harassment was not just personal, but an attack on plaintiff's integrity and professional principles. Plaintiff went on leave beginning April 2009 and proceeded to file several lawsuits against her employer — intensifying her work-related stress and anxiety. While she attempted to return to work several times, she was ultimately unsuccessful and left her position in 2013 (AR 33–46, 259, 333–36).

Due to these triggering events, plaintiff alleges that she has sudden drops in energy and is unable to focus. She finds interacting with and trusting others difficult, especially those she does not know. She asserts that she has very little tolerance for workplace politics and that, due to her experiences, work has lost all meaning. Plaintiff asserts she has not pursued medication to relieve her symptoms due to a general sensitivity to medication and a family history of adverse reactions to antidepressants. As an alternative to psychiatric drugs, she has

2

pursued acupuncture and art therapy. Plaintiff's art therapy takes place at a studio, but her interactions with others are limited. She has a handful of close friends which she will visit with, but several days a week she will not leave her home (AR 33–46, 259).

### 3. MEDICAL EVIDENCE.

The medical evidence was summarized in the ALJ's decision. This order will briefly review the findings of each physician that examined plaintiff.

*First*, Dr. Kenneth Smith, M.D., was plaintiff's primary care physician while she was working in Europe. Our record includes translated disability evaluations Dr. Smith completed for plaintiff from April 2010 through March 2012 (AR 37–38, 526–566). Dr. Smith had plaintiff placed on medical leave for acute stress reaction, PTSD, and depressive disorder, which he related to plaintiff's problems at work. The form evaluations state that plaintiff suffered from anxiety and depression, and that "she was nearly completely unable to read without experiencing feelings of anxiety, along with difficulty in concentrating" (AR 558). Dr. Smith concluded that plaintiff would not be able to resume her current work, but that she would be able to engage in other work in the future. The ALJ did not directly address Dr. Smith's evaluations in her opinion; plaintiff did not address this omission in her motion.

*Second*, plaintiff engaged in therapy with Dr. Stephen Diamond — Ph.D., clinical psychology — from June 2010 to May 2016, with a prolonged pause from the beginning of 2013 to December 9, 2014. Plaintiff held all of her sessions with Dr. Diamond telephonically and via Skype, save for one two-day, in-person session that took place in Los Angeles in January 2011. For an extended time during this period — the record indicates part of 2014 and 2015 — plaintiff resided in China, where she was receiving medical treatment for an ankle injury. Dr. Diamond's notes make up a large portion of our record, but the poor quality of the scans render his hand-written notes borderline indecipherable (AR 215, 443–44, 462).

Dr. Diamond diagnosed plaintiff with a major depressive disorder, single episode (296.22 in DSM-IV-TR and DSM 5), with symptoms "including chronic and serious suicidal ideation, depressed and anxious mood, social withdrawal, feelings of profound despair and

3

1    hopelessness, irritability, and disturbing nightmares" (AR 443–44). Dr. Diamond concluded

2    that plaintiff would be unable to work any job for the foreseeable future.

3    *Third*, starting March 2017, plaintiff engaged in psychotherapy sessions with Dr. Tracy

4    LaRue Yalom — Ph.D., psychology. The record contains Dr. Yalom's summaries of her

5    sessions with plaintiff, where she diagnosed plaintiff with a major depressive disorder,

6    recurrent moderate. Dr. Yalom summarized plaintiff's symptoms:

> depressed mood, disillusionment, fearful of future, hopelessness, anhedonia, fatigue, sense of futility, decreased confidence, pessimistic thoughts . . . isolation, decreased ability to focus, forgetfulness, diminished ability to concentrate, sensitivity to noise, discomfort with groups of people greater than [three] . . . refusal to admit or deny [suicidal ideation]

11   (AR 495–96). Dr. Yalom also concluded that plaintiff's "ongoing [symptoms] result in

12   impaired social and occupational areas of functioning" (*ibid.*).

13   *Fourth*, consultative physician Dr. Caroline Salvador-Moses, Psy.D., examined plaintiff

14   on August 9, 2017, diagnosing her with PTSD and a major depressive disorder. Dr. Salvador-

15   Moses stated: "Due to her significant depression, anxiety, and trauma symptoms that were

16   precipitated in her previous work environment, she could have severe impairment in her ability

17   to attend to usual work situations, including attendance, safety, etc. as well as in her ability to

18   deal with changes in a routine work environment" (AR 374–77).

19   *Fifth*, Disability Determination Services (DDS) review physicians Dr. Aroon

20   Suansilppongse, M.D., and Dr. Harvey Bilik, Psy.D., denied plaintiff's disability application

21   and request for reconsideration, respectively. Dr. Suansilppongse's October 2017 disability

22   determination explanation found that the plaintiff's PTSD and depression resulted in "mild

23   limitations in understanding, remembering, or applying information, moderate limitations in

24   interacting with others, moderate limitations in concentrating, persisting, or maintaining pace,

25   and moderate limitations in adapting or managing oneself" (AR 21, 54–66). In April 2018, Dr.

26   Bilik affirmed this opinion (AR 67–84). Dr. Bilik opined: "The claimant can carry out simple

27   and detailed instructions over the course of a normal workweek despite any limitations in this

28   domain" (AR 79).

**ANALYSIS**

**1.  THE LEGAL STANDARD.**

ALJ's undertake a five-step evaluation to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. *First*, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. *Second*, the ALJ evaluates whether the claimant has a medically severe impairment or combination of impairments. *Third*, the ALJ considers whether the impairment or combination of impairments meets or equals any listed impairment in the regulations. *Fourth*, the ALJ assesses whether the claimant is capable of performing her past relevant work based on her residual functional capacity. *Fifth*, the ALJ examines whether the claimant can perform any other jobs in the national economy. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (quotation omitted).

A decision denying disability benefits must be upheld if it is supported by substantial evidence and free of legal error. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "Substantial evidence means more than a scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quotation omitted). Federal courts must "consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Ibid.* (quotation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," so when "the evidence can reasonably support either affirming or reversing a decision, [a district court] may not substitute [its] judgment for that of the [ALJ]." *Garrison*, 759 F.3d at 1010 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### 2. THE ALJ ERRED IN DISCREDITING PLAINTIFF'S TESTIMONY.

Plaintiff argues the ALJ erred by discounting her symptom testimony because of her refusal to take psychotropic drugs without also addressing her explanation for such a refusal. This order agrees.

When evaluating a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *First*, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. *Second*, the ALJ evaluates the intensity, persistence, and limiting effects of a claimant's symptoms. At step two the ALJ reviews the entire case record. If no evidence of malingering exists, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quotation and citation omitted); *see also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); Social Security Ruling (SSR) 16-3p.

Here, the ALJ stated at step one that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," while at step two she found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (AR 19–20). For step two, the ALJ reasoned that:

> The documented objective medical evidence, including generally normal clinical findings and the claimant's relatively intact daily activities are inconsistent with functional limitations to the degree alleged. Although the claimant has received treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature. Furthermore, the record also reveals that the treatment has been generally successful in controlling those symptoms. Despite the complaints of allegedly disabling symptoms, the claimant has not taken any medications for those symptoms. Additionally, the claimant lives alone and does not report any particular difficulties in maintaining her residence or her lifestyle. The claimant reported that she stays home most of the time due to anxiety, but she has friends. She reported that she limited social interactions due to lack of interest and energy. Yet, she reported spending most of her day meditating and exercising

6

(*Ibid*). The ALJ recited several factors to support her conclusion but placed especial emphasis on plaintiff's refusal to take psychiatric drugs, which in turn factored into the ALJ's conclusion that plaintiff engaged in a conservative course of treatment.

The ALJ repeatedly emphasized plaintiff's lack of drug regimen throughout the opinion. When evaluating whether plaintiff had a medically determinable impairment, the ALJ noted that plaintiff "testified that she lives alone and does not take any psychiatric medication because of medical sensitivity" (AR 19). A few paragraphs later, the ALJ summarized that the "sparse treatment notes reveal that the claimant received routine, conservative, and non-emergency treatment since her alleged onset date" (*ibid.*). The ALJ further remarked that plaintiff's "psychotherapy sessions averaged three times per month and she was not prescribed medications" (AR 20). Later, when reviewing the medical evidence, the ALJ relayed how "Dr. Yalom stated that the claimant has never been hospitalized for mental disorder, she attends weekly psychotherapy, and she is not on any medications" (AR 21). The ALJ declined to give much weight to Dr. Yalom's opinion in part because "the claimant does not take any medications" (*ibid.*). All told, the ALJ specifically referenced plaintiff's lack of drug regimen five times in the decision and four times in the thirty-four-minute administrative hearing (Br. 1). This order finds it clear that the ALJ premised her decision in large part, if not primarily, on plaintiff's lack of a psychiatric drug regimen.

But despite the notable reliance on plaintiff's lack of medication, the ALJ's decision failed to include any review of plaintiff's stated "medical sensitivity" to psychiatric drugs. Plaintiff elaborated during the hearing on why she did not have a prescription for any psychiatric drugs (AR 41–42):

> [M]y general sensitivity to medication, and the family history of sensitivity to medication. My mother, when she was moved at a -- when she was very old, she was moved to a nursing home, and she was put on antidepressants as, you know, a way to manage her, her displeasures, actually, she was very upset about being moved to a nursing home. She started having a lot of reaction, such as rashes that she would then scratch, and they would bleed, and it led to bleeding in -- of her stomach, and she was hospitalized a couple of times for that, and eventually died of bleeding stomach. She had no other history of an ulcer prior to that. I have been treated for ulcer related to stress a long time ago. And I am very sensitive. I

7

> generally get most of the side effects from those listed. So, they --
> that was a great concern.

Plaintiff testified in some detail on her sensitivity to medication, even describing how her mother's death from gastrointestinal bleeding was directly related to side effects from prescription antidepressants. An ALJ may not "find an individual's symptoms inconsistent with the evidence in the record without considering possible reasons" for the individual's failure to seek treatment. *See* SSR 16-3p. Our court of appeals has noted "the side effects of medications can have a significant impact on an individual's ability to work and should figure in the disability determination process." *Varney v. Sec. of Health & Hum. Servs.*, 846 F.2d 581, 585 (9th Cir.), *modified on rehearing on other grounds*, 859 F.2d 1396 (1988). The ALJ discounted plaintiff's symptom testimony primarily because of her lack of medication and resultant conservative treatment regimen. Yet the ALJ failed to consider plaintiff's explicit explanation for her refusal to take medication. This omission was error. the ALJ cannot rely on plaintiff's refusal to take medication to justify discounting her symptom testimony without assessing plaintiff's reasons for that refusal.

The Commissioner disagrees, citing *Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002), for the proposition that the ALJ permissibly discounted plaintiff's testimony because there is no objective evidence that plaintiff experiences negative side effects from "*all* anti-depressant medications" (Opp. 6). In that case, our court of appeals did hold that the ALJ properly rejected the claimant's testimony that her pain medication caused adverse side effects, but it premised that decision on the ALJ's explicit finding that the claimant "seemed to engage in considerable histrionic exaggeration." *Thomas*, 278 F.3d at 960. The ALJ made no such finding here. Plaintiff, in fact, has remained consistent from the earliest point in the record that antidepressants cause her adverse side effects and that she has a family history of negative reactions to antidepressants (*e.g.*, AR 375, 443–44, 517). Moreover, the argument the ALJ did not err because plaintiff did not provide objective evidence she suffers side effects from *all* antidepressant medications is specious. Such a standard would obviate the need for the ALJ to ever consider medical side effects because the ALJ could simply make the conclusory statement that the claimant has not tried every potential drug regimen. The proffered exception

8

1    would swallow the rule.  If the evidence in the record was ambiguous as to plaintiff's

2    sensitivity to medication, the ALJ had a duty to develop the record on that point.  *See Mayes v.*

3    *Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).

4        In sum, the ALJ erred by discounting plaintiff's symptom testimony due to her lack of

5    prescription drug regimen without addressing plaintiff's stated sensitivity to the side effects of

6    psychiatric drugs.  By neglecting to assess plaintiff's explanation for her alleged conservative

7    treatment, the ALJ did not provide specific, clear and convincing reasoning to discount

8    plaintiff's symptom testimony.  Defendant states in a footnote that the appropriate standard for

9    discrediting a claimant's allegations is substantial evidence rather than the clear and

10   convincing standard our court of appeals mandates (Opp. 4 n. 2).  This order finds the ALJ's

11   failure to address plaintiff's justification for refusing a drug regimen to treat her mental illness

12   reversible error under either standard, and proceeds to consider the appropriate remedy.

13       **3.    PLAINTIFF'S REQUEST FOR REMAND ONLY TO DETERMINE BENEFITS.**

14

15       Plaintiff contends this order should credit the improperly discounted symptom testimony

16   as true and remand only for a determination of benefits.

17       Generally, when an order reverses an ALJ's decision, "the proper course, except in rare

18   circumstances, is to remand to the agency for additional investigation or explanation."

19   *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).  Indeed, it is the claimant who has the

20   burden of proving disability.  *Andrews*, 53 F.3d at 1040.  Where "there are outstanding issues

21   that must be resolved before a determination can be made, or if further administrative

22   proceedings would be useful, a remand [for further proceedings] is necessary."  *Leon v.*

23   *Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

24       This order finds that further administrative proceedings would be useful.  Specifically,

25   remand would enable the ALJ to provide a more definitive explanation why plaintiff's

26   assertion that she suffers serious side effects from psychiatric drugs was inapposite.  This

27   remand in no way suggests that the ALJ should change her mind on the ultimate issue of

28

disability (or suggests she should not change her mind).  Rather, this remand is ordered out of an abundance of caution to make sure the ALJ's explanation is adequate under circuit law.

### CONCLUSION

To the foregoing extent, plaintiff's motion for summary judgment is **GRANTED**. Plaintiff's request for an immediate determination of benefits is **DENIED**, and this matter is **REMANDED** for further administrative proceedings consistent with this order.  Defendant's cross-motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated:  November 22, 2021.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE